UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA,

Plaintiff,

v.

Civil Action No.:   5:23-cv-00406

$66,506.26 SEIZED FROM TRUIST, ACCOUNT NUMBER XX6412;
$55,049.44 SEIZED FROM TRUIST, ACCOUNTNUMBERXX3150;
$23,541.50 SEIZED FROM TRUIST, ACCOUNTNUMBERXX0760;
$1,203,152.61 FROZEN FROM TD AMERITRADE XX3306;

Defendants *in rem*.

<u>VERIFIED COMPLAINT FOR FORFEITURE IN REM</u>

COMES NOW, Plaintiff, United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, and alleges as follows:

## I.     INTRODUCTION

1.     This is a civil action for forfeiture in rem, pursuant to 18 U.S.C. § 981(a)(l)(A), (l)(C), the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Case Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, and 18 U.S.C. § 985, to forfeit assets that theft of government funds, theft of stolen funds across state lines, wire fraud, and money laundering in violation of 18 U.S.C. §§ 287, 641, and 1343, and/or property traceable to such property (the "Defendant Assets"). The Defendant Assets also are involved in monetary transactions in violation of 18 U.S.C. § 1957, laundering of monetary instruments exceeding $10,000.00.

2.     The Defendant Assets, which include four Defendant Accounts totaling approximately $1,348,249.81 in value are more particularly described as:

1

"Defendant Assets"

    (i)     Approximately $66,506.26 seized from Truist account number XX6412 in the name of RKB Inc. ("RKB account 6412");

    (ii)    Approximately $55,049.44 seized from Truist account number XX3150 in the name of RKB ("RKB account 3150");

    (iii)   Approximately $23,541.50 seized from Truist account number XX0760 in the name of RKB ("RKB account 0760"); and

    (iv)   Approximately $1,203,152.61 frozen with TD Ameritrade, XX3306.

3.     This action seeks forfeiture of all right, title and interest in the above-captioned Defendant Assets because the properties constitute or are derived from proceeds of theft of government funds, theft of stolen funds across state lines, wire fraud, and money laundering in violation of 18 U.S.C. §§ 287, 641, and 1343. The Defendant Assets also are involved in monetary transactions in violation of 18 U.S.C. § 1957, laundering of monetary instruments exceeding $10,000.00.

4.     In March 2020, in response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act""), which established the Paycheck Protection Program ("PPP"). Section 1102 of the Cares Act established the PPP, a temporary program targeted at providing small businesses with the funds necessary to meet their payroll and operating expenses and therefore keep workers employed. *See CARES ACT* § 1102, 134 Stat. at 286 (codified as amended at 15 U.S.C. § 636(a)(36)).

5.     The PPP provided potentially forgivable loans to eligible small businesses, allowing the recipient to seek loan forgiveness if at least 60% of the loaned funds are used for specified expenses, such as payroll. *See id.* § 636(a)(36); *id.* § 636m(b)–(d). The CARES Act also authorized the Small Business Administration ("SBA") to provide low-interest loans to small businesses, also known as the Economic Injury Disaster Loan ("EDIL"). SBA's EIDL program

provides small businesses with working capital loans of up to $2 million to help overcome the temporary loss of revenue.

## II.     JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter. See 28 U.S.C. §§ 1345, 1355(a).

7.      This Court has in rem jurisdiction over the Defendant Assets. See 28 U.S.C. §§ 1345, 1355(a).

8.      The Defendant Assets have been seized and are in the custody of the United States, except TD Ameritrade which is currently restrained by the United States.

9.      Venue for this action is proper in the Southern District of West Virginia because acts or omissions giving rise to the forfeiture occurred in this District. See 28 U.S.C. § 1355(b)(1).

## III.     FACTUAL ALLEGATIONS

10.      Ryan Bailey ("Bailey") obtained thousands of dollars in proceeds in the Defendant Assets, captioned above, and engaged in theft of government proceeds, and engaged in transactions in violation of the money laundering laws, including transactions that promoted his illicit activities, namely his wire fraud.  Bailey also used the accounts to attempt to conceal the fraud.

11.      Bailey violated 18 U.S.C § 641 (theft of government funds), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (money laundering of illicit funds), and 18 U.S.C. § 1957 (laundering in monetary transactions in property derived from specified unlawful activity exceeding $10,000.00).

12.      Bailey resides within the Southern District of West Virginia, Beaver, Raleigh County, West Virginia.

13.      Bailey is a 100% Shareholder, of RKB Inc. ("RKB"), an S Corporation.

14.     RKB is a West Virginia corporation incorporated in 2007 at the West Virginia Secretary of State's Office and the principal place of business is in Raleigh County, West Virginia, which is in the Southern District of West Virginia.

<u>THE PAYCHECK PROTECTION PROGRAM</u>

15.     The SBA is an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

16.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

17.     CARES Act provided emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

18.     The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds to cover payroll costs, interest on mortgages, rent and utilities. The PPP allowed interest and principal on the PPP loans to be entirely forgiven if the businesses spent the loan proceeds to cover these expenses within a designated time and used a certain specified percentage of the PPP loan proceeds on payroll expenses.

19.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application. The PPP loan application required the small business (through its authorized

4

representative) to acknowledge the program rules and make affirmative certifications that the small business was eligible to obtain the PPP loan. In addition, businesses applying for a PPP loan were required to provide documentation showing their prior gross income from either 2019 or 2020. Applicants also had to certify that the small business was in operation on February 15, 2020.

20.     A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

## THE ECONOMIC INJURY DISASTER LOAN PROGRAM

21.     The Economic Injury Disaster Loan Program ("EIDL") is a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

22.     The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

23.     To obtain an EIDL loan, a qualifying business is required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, and revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.   In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019 to January 31, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

24.     EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold.  Any funds issued under an EIDL loan were issued directly by the SBA.

25.     EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

<u>RELEVANT LENDING INSTITUTIONS</u>

26.     Lender A (Pioneer Community Bank – Bank 1)  is a financial institution insured by the Federal Deposit Insurance Company ("FDIC") and Bank 1 is an approved SBA lender of PPP loans.

27.     Lender B is the United States Small Business Administration.

<u>BANK ACCOUNTS CONTROLLED BY RYAN BAILEY</u>

28.     Bailey maintained the following bank accounts:

    (a)     signer on account number XX5281 in the name of RKB and was maintained at Bank 1, whose headquarters is located in McDowell County, West Virginia and has several Bank branches throughout Southern West Virginia;

    (b)     signer on accounts at Truist Bank (Formerly BB&T) which is Bank 2, whose headquarters is in Charlotte, North Carolina and has branch offices throughout Southern West Virginia;

    (c)     signer on Business Account in the name of RKB account number XX6412; and

    (d)     named as authorized signer on personal accounts, account number XX3150

and account number XXX0760.

### PPP Loan $166,517.40

29.     On or about April 28, 2020, Bailey applied for a PPP loan for RKB from Lender A (Bank 1) in the amount of $166,517.40.  The PPP loan number was XX7207.

30.     Bailey certified that the information provided in all supporting documents and forms were true and correct.

31.     Bailey also certified that the funds would be used "to retain workers and maintain payroll," as well as for making other permissible expenses.

32.     The PPP Loan Application reflects the purpose of this loan would be for Payroll, Lease/Mortgage Interest and Utilities.

33.     On or about April 28, 2020, SBA approved RKB's PPP loan application. Bailey signed the note on May 1, 2020 obligating RKB.

34.     On or about May 1, 2020, SBA sent $166,517.40 in PPP loan proceeds to RKB which were deposited into RKB's business checking account at Bank 1, account number XX5281.

35.     On or about November 30, 2020, Bailey on behalf of RKB submitted a PPP Loan Forgiveness Application where he certified that (a) the dollar amount for which forgiveness is requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees, business mortgage interest payments, business rent or lease payments or business utility payments); and (b) the monies used included payroll costs equal to at least 60% of the forgiveness amount.

36.    Bailey also certified on the PPP Loan Forgiveness Application that "I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

37.    Bailey further certified that "the information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

FIRST EIDL Loan for $150,000.00

38.    On or about June 25, 2020, Bailey on behalf of RKB electronically submitted and applied for an EIDL loan with the SBA. SBA approved the loan application on or about January 13, 2021.

39.    On or about January 14, 2021, the SBA sent $149,900.00 in EIDL loan proceeds to RKB's bank account, number XX6412 at Bank. Bank 2 charged a $100.00 wire transfer fee, making the EDIL Loan total $150,000.

40.    On or about January 6, 2021, Bailey electronically signed a Loan Authorization and Agreement. Bailey also signed the note to the SBA as the owner of RKB.

41.    Bailey represented in the Loan Authorization and Agreement that he would use the proceeds of the EIDL Loan solely as working capital to alleviate COVID related economic injury.

42.    Bailey did not use the EDIL Loan for the permissible purposes as required in the Loan Authorization Agreement.

43.    Instead of using the EIDL funds for permissible purposes, Bailey used the EIDL funds to personally enrich himself by transferring these funds to his personal bank accounts and/or to transferring these funds to personal investment accounts.

## SECOND EDIL Loan for $350,000.00 (First Modification)

44.     On or about December 5, 2021, Bailey on behalf of RKB electronically submitted and applied for a Modification of the EDIL loan with the SBA.

45.     SBA approved the First Modification of the EIDL loan, increasing the amount from $150,000.00 to $500,000.00.

46.     On or about December 5, 2021, Bailey electronically signed an Amended Loan Authorization and Agreement for Application Number 3306594147.

47.     On or about December 5, 2021, the SBA approved the requested EIDL loan.

48.     Bailey signed the note to the SBA as the owner of RKB and uploaded the DocuSign Loan Document to SBA.

49.     On or about December 10, 2021, SBA, through Bank 2, sent $350,000.00 in EIDL loan proceeds which was deposited into the RKB's business checking account at Bank 2, account number XX6412.

50.     Bailey represented in the Amended Loan Authorization and Agreement that he would use the proceeds of the EIDL Loan solely as working capital to alleviate economic injury.

51.     Instead of using the EIDL funds for permissible purposes, Bailey used the EIDL funds to personally enrich himself by transferring these funds to his personal bank accounts and/or to personal investment accounts.

## THIRD EDIL Loan for $1,000,000.00 (Second Modification)

52.     On or about January 20, 2022, Bailey on behalf of RKB electronically submitted and applied for a Second Modification to the EIDL Loan with the SBA.

53.     On or about January 20, 2022, Bailey electronically signed an Amended Loan Authorization and Agreement for Application Number 3306594147.

54.     Bailey represented in the Amended Loan Authorization and Agreement that the EIDL loan proceeds would be used solely as working capital to alleviate COVID related economic injury.

55.     On or about February 9, 2022, SBA, through Bank 2, sent $1,000,000.00 in EIDL loan proceeds which was deposited into RKB's account, account number XX6412, at Bank 2.

56.     Instead of using the EIDL funds for permissible purposes, Bailey used the EIDL funds to personally enrich himself by transferring these funds to his personal bank accounts and/or to personal investment accounts.

FOURTH EDIL Loan for $500,000.00 (Third Modification)

57.     On or about February 22, 2022, Bailey on behalf of RKB electronically submitted and applied for a Third Modification to their EIDL Loan with the SBA.

58.     Bailey again used the same information that he provided the SBA as he had provided on his initial EIDL loan application.

59.     Bailey electronically certified "Borrower will use all the proceeds of this Loan as working capital to alleviate economic injury caused by the Disaster occurring in the month of January 2020 and continuing thereafter."

60.     SBA approved RKB's Third Modification on the EIDL Loan Application on or about February 22, 2022. Bailey signed the note as the owner of RKB.

61.     Bailey uploaded the EIDL Documents for this Third Modification to SBA.

62.     On or about March 1, 2022, SBA, through Bank 2, sent $500,000.00 in EIDL loan proceeds via an ACH Transfer, which was deposited into RKB's account number XX6412 at Bank 2.

63.     Instead of using the EIDL funds for permissible purposes, Bailey used the EIDL funds to personally enrich himself by transferring these funds to his personal bank accounts and/or to personal investment accounts.

## IMPROPER USE OF PPP LOAN PROCEEDS

64.     On 5/8/2020, Bailey transferred $160,000.00 of the PPP Loan proceeds to RYAN and Tiffany BAILEY's personal account, XX3150 at Bank 2.

65.     On 5/12/2020, Bailey transferred $160,000.00 to Bailey's personal investment brokerage account managed by Apex Clearing.

## IMPROPER USE OF EIDL LOAN PROCEEDS

66.     On 1/14/2021, Bailey transferred $149,900.00 of EIDL loan proceeds to the RYAN and Tiffany BAILEY's personal account XX0760 at Bank 2.

67.     On 1/15/2021, Bailey transferred $100,000.00 from the RYAN and Tiffany BAILEY account XX0760 to their personal brokerage account at Ameritrade.

68.     On or about 2/2/2021, Bailey transferred the $149,900.00 from the RYAN and Tiffany BAILEY account XX0760 to the Bailey's personal account at Ameritrade.

69.     On 12/17/2021, Bailey transferred $375,000.00 of the EDIL Loan proceeds to RYAN and Tiffany BAILEY's personal account XX0760 at Bank 2.

70.     On 12/17/2021, Bailey transferred $5,000.00 of the EDIL Loan proceeds from RYAN and Tiffany BAILEY's personal account at Bank 2, into account number XXX0760 at DRAFT KINGS.

71.     On 12/20/2021, Bailey transferred $250,000.00 of the EDIL Loan proceeds from RYAN and Tiffany BAILEY's personal account at Bank 2, account number XXX0760 to their personal brokerage account at Ameritrade XX3306.

72.     On 12/29/2021, Bailey transferred $90,000.00 of the EDIL Loan proceeds from RYAN and Tiffany BAILEY's personal account at Bank 2, account number XXX0760 to their personal brokerage account at Ameritrade XX3306.

73.     On 12/29/2021, Bailey transferred $2,500.00 of the EDIL Loan proceeds from RYAN and Tiffany BAILEY's personal account at Bank 2, into account number XX0760 at Draft Kings.

74.     On 12/29/2021, Bailey transferred $7,500.00 of the EDIL Loan proceeds from RYAN and Tiffany BAILEY's personal account at Bank 2, to account number XX0760 at Draft Kings.

75.     On 2/11/2022, Bailey transferred $75,000.00 out of the RKB account to the Ryan and Tiffany Bailey's personal account.  On the same day, Bailey transferred $45,000.00 and $35,000.00 from RYAN and Tiffany BAILEY's personal account at Bank 2, account number XXX0760 to Coinbase Inc.

76.     On 2/18/2022, Bailey transferred $250,000.00 out of the RKB account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

77.     On 2/22/2022, Bailey transferred $250,000.00 out of the RKB account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

78.     On 2/24/2022, Bailey transferred $150,000.00 out of the RKB account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

79.     On or about 3/10/2022, Bailey transferred $250,000.00 out of the RKB account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

80.     On or about 4/4/2022, Bailey transferred $250,000.00 out of the RKB Inc. account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

81.     On or about 4/13/2022, Bailey transferred $250,000.00 out of the RKB account at Bank 2, account number XXX6412, to the personal brokerage account at Ameritrade XX3306.

## CONCEALMENT BY TRANSFERRING FUNDS AT END OF TAX YEAR

82.     From 12/27/2022 through 12/29/2022, Bailey transferred $1,200,000.00 out of his personal account at Bank 2, account number XX3150, into RKB's account XX6412 at Bank 2.

83.     On or about 1/5/2023, Bailey transferred $1,000,000.00 from RKB's account XX6412 at Bank 2, to the personal brokerage account at Ameritrade XX3306, reversing the end of the year transfer into RKB's business account.

84.     On or about 1/6/2023, Bailey transferred $250,000.00 from RKB's account XX65412 at Bank 2, into his personal account at Ameritrade XX3306, reversing the remaining funds transferred at end of the year into RKB's business account back into his personal brokerage account.

## IV.     BASIS FOR FORFEITURE

### Count One—Engaging in False, fictitious or fraudulent claims

85.     The United States incorporates by reference paragraphs 1 through 84 above as if fully set forth herein.

86.     Pursuant to 18 U.S.C. § 287, it is a federal crime to "make[] or present[] to any person or . . . to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent. . ."

87.     As set forth above, Bailey knowingly made false, fictitious or fraudulent claims to the United States, and the Defendant Assets were involved in transactions or attempted

transactions in violation of 18 U.S.C. § 287, false, fictitious or fraudulent claims, and/or constitute property traceable to such property.

88.     Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

89.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

90.     Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Two—Public money, property, or records

91.     The United States incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

92.     Pursuant to 18 U.S.C. § 641, it is a federal crime to "embezzle[], steal[], purloin[], or knowingly convert[] to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any7 department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof[.]

93.     As set forth above, Bailey knowingly stole or knowingly converted to his use or use of another without authority money of the United States made or being made under contract for the United States in violation of 18 U.S.C. § 641, public money, property or records.

14

94.     Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

95.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

96.     Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Three—Fraud by wire, radio, or television

97.     The United States incorporates by reference paragraphs 1 through 96 above as if fully set forth herein.

98.     Pursuant to 18 U.S.C. § 1343, it is a federal crime to "devise[], or intend[] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire. . .in interstate or foreign commerce. . .for the purpose of executing such scheme or artifice. . ."

99.     As set forth above, Bailey devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits, or causes to be transmitted by means of wire for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343, fraud by wire, radio, or television.

100.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

101.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

102.    Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Four—Engaging in monetary transactions in property derived from specified unlawful activity

103.    The United States incorporates by reference paragraphs 1 through 102 above as if fully set forth herein.

104.    Pursuant to 18 U.S.C. § 1957, it is a federal crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified activity."

105.    As set forth above, Bailey knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000.00 and was derived from specified unlawful activity in violation of 18 U.S.C. § 1957, engaging in monetary transactions in property derived from specified unlawful activity.

106.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

107.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

108.    Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

WHEREFORE, Plaintiff, the United States of America requests that: the Clerk of the Court issue warrants for arrest of Defendant Assets, except for TD Ameritrade, account number XX3306; that this Honorable Court issue a warrant for the arrest of TD Ameritrade, account number XX3306; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States; and such other and further relief as it deems proper and just.

Respectfully submitted,

**WILLIAM S. THOMPSON**
United States Attorney

By:      /s/Christopher R. Arthur
         CHRISTOPHER R. ARTHUR
         Assistant United States Attorney
         W.VA State Bar No. 9192
         300 Virginia Street, East
         Room 4000
         Charleston, WV  25301
         Telephone:  304-345-2200
         E-mail: chris.arthur@usdoj.gov

## **VERIFICATION**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO-WIT:

I, Timothy C. Butler, financial forensics investigator from the Office of the West Virginia State Auditor's Financial Forensics Team—Public Integrity and Fraud Unit, detailed to the Office of the United States Attorney in the Southern District of West Virginia, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on May ___17___, 2023.

TIMOTHY C. BUTLER

Taken, subscribed and sworn to before me this _17th_ day of May, 2023.

_Evaline Bennett Cooper_
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Evaline Bennett Cooper
1690 Carey Place, Charleston, WV 25314
My Commission Expires April 30,
2026

My commission expires on ___April 30, 2026___.